**Reversed and Remanded and Opinion Filed July 17, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01557-CV

**RICHARD MYERS, Appellant**
**V.**
**HALL COLUMBUS LENDER, LLC, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-04295**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice FitzGerald

Appellee Hall Columbus Lender, LLC (Lender) sued appellant Richard Myers for breaching contracts in which Myers promised to defend Lender against certain claims. In response to Lender's motion for summary judgment, Myers argued as a matter of contract interpretation that he was not in breach because his duty to defend had not been triggered. The trial judge granted a partial summary judgment for Lender and later signed a final judgment in Lender's favor. Agreeing with Myers's interpretation of the contracts, we reverse and remand.

### I. BACKGROUND

#### A. Facts

Most of the issues in this case were resolved on the motion for summary judgment filed by appellee Lender. The following facts find support in the summary-judgment evidence.

In December 2006, Lender entered two loan agreements with NP Platinum Hotel, LLC (Borrower) to finance the construction of a hotel in Ohio. These agreements contain clauses obliging Borrower to defend and indemnify Lender against claims arising in connection with the project. In January 2009, the loan agreements were amended, but no one contends the amendments affected Borrower's defense and indemnity obligations. At the same time, appellant Myers signed two guaranty agreements in favor of Lender in which he generally guarantied Borrower's obligations under the amended loan agreements.

In the first half of 2010, Irwin F. Silverstein and others sued Myers, Lender, and others in Texas state court on various claims arising from the plaintiffs' investments in the hotel project. The record does not contain the original or first amended *Silverstein* petition, but it does contain the second amended *Silverstein* petition, which has a certificate of service dated May 7, 2010. The claims asserted in that pleading include a claim against "one or more and maybe all" defendants for real-estate and stock fraud under the Texas Business and Commerce Code. In that same general time frame, 2009–2010, Borrower defaulted on various obligations under the loan agreements. Lender, Borrower, Myers, and another guarantor called N.P. Limited Partnership executed a forbearance agreement with an effective date of May 13, 2010. The forbearance agreement, which is central to this appeal, amended the guaranty agreements in several respects that will be discussed later.

In February 2011, Lender made a demand on Myers that he reimburse Lender for its defense costs incurred in the *Silverstein* lawsuit and pay for Lender's defense going forward. In March 2011, Lender was nonsuited from the *Silverstein* lawsuit.

B.      **Procedural history**

Lender sued Myers for breaching the guaranty agreements by failing to defend and indemnify Lender in connection with the *Silverstein* lawsuit. Lender also sought a declaratory

judgment that Myers owed Lender defense and indemnity obligations in connection with the *Silverstein* lawsuit, and it sought to recover its attorneys' fees. Myers filed an answer containing a general denial and specific denials that certain conditions precedent had been fulfilled.

Lender filed a motion for summary judgment on the entire case, and Myers filed a response. The trial judge signed an order granting Lender's motion in part. The judge ruled that Lender was entitled to summary judgment on its breach-of-contract claim in the amount of $79,000, but that fact issues remained to be tried as to Lender's request for attorneys' fees. The judge did not mention Lender's declaratory-judgment claim. A one-day bench trial was later held. The trial judge then signed a final judgment in favor of Lender. The judge awarded Lender the $79,000 in damages previously assessed, plus trial-level attorneys' fees and conditional appellate attorneys' fees. The judge also granted a declaratory judgment that "Myers has a duty to defend [Lender] in the Silverstein Lawsuit."

Myers timely appealed the final judgment

## II. ANALYSIS

Myers asserts three issues on appeal. In his first issue, he challenges the partial summary judgment on breach of contract. In his second issue, he challenges the award of attorneys' fees. And in his third issue, he challenges the award of declaratory relief.

### A. Summary judgment

#### 1. Standard of review, choice of law, and issue presented

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). When we review a summary judgment in favor of a plaintiff, we determine whether the plaintiff established every element of its claim as a matter of law. *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.). We consider the

evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the movant. *Id.*

Although the guaranty agreements contain Ohio choice-of-law clauses, Myers relies entirely on Texas law in his appellate brief. Lender cites eighteen Texas cases and two Ohio cases. Lender does not argue that Ohio law differs from Texas law on any material point, and it asserts that Ohio and Texas law are the same on one point. Under these circumstances, we will apply Texas law. *See El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 n.26 (Tex. 2012) (presuming that Texas law and New York law were the same because the parties pointed to no material differences between them).

The elements of a claim for breach of contract are (1) a contract existed between the parties, (2) the contract created duties, (3) the defendant breached a material duty under the contract, and (4) the plaintiff sustained damages. *Cadle Co. v. Castle*, 913 S.W.2d 627, 631 (Tex. App.—Dallas 1995, writ denied) (en banc). Myers contends that Lender failed to carry its burden of proving as a matter of law that Myers breached the contracts in question, namely the guaranty agreements as amended by the forbearance agreement. Myers's argument is one of contract interpretation. That is, he does not dispute that he has neither defended nor indemnified Lender against the *Silverstein* lawsuit. Rather, he contends that the contracts, properly interpreted, do not require him to defend or indemnify Lender under the facts Lender proved on summary judgment. Lender, of course, disagrees.

### 2. Essential contract provisions at issue

There are three sets of contracts involved in this case: the loan agreements between Lender and Borrower, the guaranty agreements between Lender and Myers, and a forbearance agreement that modifies the guaranty agreements. The loan agreements between Lender and Borrower contain the following indemnification provision:

–4–

> Borrower shall indemnify Lender [and others] and defend and hold each Indemnified Party harmless from and against all claims, injury, damage, loss and liability, cost and expense (including reasonable attorneys' fees, costs and expenses) of any and every kind to any persons or property by reason of [three enumerated matters] or (iv) any other matter arising in connection with the Loan, Borrower, Guarantor, Pledgor or the Project.

Myers does not dispute that the claims against Lender in the *Silverstein* lawsuit come within this clause.

In 2009, Myers executed two guaranty agreements relating to the loan agreements between Borrower and Lender. Each guaranty agreement contains the same broad guaranty clause in section 3: "Guarantor hereby unconditionally and irrevocably guarantees to Lender the timely performance of the Guaranteed Performance Obligations." Myers does not dispute that Borrower's duties to defend and indemnify Lender under the loan agreements are "Guaranteed Performance Obligations" under the guaranty agreements. Each guaranty agreement also contains a host of limitations on Myers's guaranty obligations in section 4, entitled "Limitations."

The crux of the case is the 2011 forbearance agreement, in which Myers and Lender amended section 4 of each of the guaranty agreements. Section 2.2 of the forbearance agreement is entitled "Amendment of Guaranty Agreements," and section 2.2(b) provides as follows:

> Notwithstanding anything contained in this Agreement or the Loan Documents to the foregoing [sic], <u>Section 4</u> of each Guaranty Agreement executed by Myers shall hereby be deleted, and is hereby amended and restated in its entirety as follows:

> > "<u>LIMITATIONS</u>. Notwithstanding anything in this Guaranty or the other Loan Documents to the contrary, and subject to the limitation described in the paragraph below, Guarantor shall be obligated to pay in full the Guaranteed Indebtedness and perform the Guaranteed Performance Obligations <u>only</u> upon the occurrence of any of the following events on or after the date hereof:

> > > a. the filing by Borrower or Guarantor of any proceeding for relief under any Debtor Relief Laws . . .

> > > b. [omitted]

–5–

> c. fraud or intentional or material misrepresentation by the Borrower or Guarantor related to the Project or to the Loan Documents or the transactions contemplated thereby . . . .
>
> [d. and e. omitted]; or
>
> [f. omitted.]
>
> . . ."

The proper interpretation of the above quoted language, and amended section 4(c) in particular, is at the heart of this dispute. Myers argues that under a proper interpretation, Lender failed to prove as a matter of law that the condition set forth in amended section 4(c) ever came to pass. Lender argues that it successfully carried its burden.

### 3.     Application of the law to the facts

If a guaranty agreement is unambiguous, we construe it under the usual rules of contract interpretation. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, No. 12-0937, 2014 WL 2619524, at *4 (Tex. June 13, 2014). Our primary concern is to ascertain the true intentions of the parties as expressed in the contract. *Id.* We give terms their ordinary meanings unless the agreement shows that some other meaning was intended. *Id.* And we examine the whole agreement, endeavoring to harmonize and give effect to all provisions so that none will be rendered meaningless. *Id.*

The plain meaning of section 2.2(b) of the forbearance agreement is that the original language of section 4 in the guaranty agreements should be deleted entirely and replaced with the new section 4 language that appears in section 2.2(b) inside the quotation marks. Thus, the guaranty agreements as amended provide that Myers will owe Lender performance of the

Guaranteed Performance Obligations—such as the duty to defend and indemnify Lender—"only upon the occurrence of any of the [specified] events on or after the date hereof."[1]

So, reading all the documents together, we see the following terms. Under the loan agreements, Borrower (NP Platinum Hotel, LLC) has a duty to defend and indemnify Lender against claims such as those alleged in the *Silverstein* lawsuit. Under the guaranty agreements, as amended by the forbearance agreement, Myers as guarantor also owes Lender those duties if certain conditions are met. Lender relies solely on the condition set forth in amended section 4(c). Under that provision, Myers's duty to defend and indemnify was triggered "only upon the occurrence of . . . fraud or intentional or material misrepresentation by the Borrower or Guarantor related to the Project" on or after the specified date.

The questions presented are how to interpret the condition in amended section 4(c) in the context of the contracts as a whole, and whether that condition was satisfied when the *Silverstein* plaintiffs alleged fraud against Myers. Myers argues that the mere allegations in the *Silverstein* pleadings are not enough to satisfy amended section 4(c). He focuses on the ordinary meaning of "occurrence," which is an incident or event, i.e., something that happens or takes place. *See* THE NEW OXFORD AMERICAN DICTIONARY 1184 (2001) (definitions of "occurrence" and "occur"). Giving "occurrence" its ordinary meaning, according to Myers, means that he owes Lender no duty to defend or indemnify unless he (or Borrower) committed fraud or intentional or material misrepresentation related to the hotel project on or after the relevant date. If the parties had meant for Myers's duties to be triggered by a mere allegation of fraud, argues Myers, they would have said "allegation" instead of "occurrence." According to Myers, the summary-judgment evidence shows only that the *Silverstein* plaintiffs have alleged fraud, not that Myers actually

---

[1] The parties dispute what the phrase "the date hereof" means. Myers argues it means the date of the forbearance agreement, but Lender argues it means the effective date of the guaranty agreements. The dispute is not material to our disposition of the case, so we do not resolve it.

committed fraud. There being no proof of an actual occurrence of fraud by Myers after the specified date, Myers concludes, Lender failed to prove that his duty to defend and indemnify was triggered or breached. Myers's interpretation is, on its face, a reasonable one.

We turn to Lender's arguments that we should interpret amended section 4(c) to provide that Myers's duties to defend and indemnify were triggered by the assertion of the fraud claim in the *Silverstein* lawsuit against Myers. Lender's first argument is that Myers is improperly conflating the duty to indemnify and the duty to defend. Lender invokes the well-settled law of insurance that a liability insurer's duty to defend is triggered by an allegation of a covered claim against its insured, but the duty to indemnify is triggered (or not) by the outcome of the case against the insured. *See generally Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam). Lender argues that Myers's duty to defend should work the same way. But even in the insurance context, the duty to defend is a contractual duty that depends on the precise terms of the contract. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) ("The duty to defend depends on the language of the policy setting out the contractual agreement between insurer and insured.") (footnote omitted); *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 786 (Tex. App.—Texarkana 1994, no writ) ("[A]bsent a contract to defend, the insurer has no duty to defend."). Thus, the determination of whether an insurer's duty to defend has been triggered cannot be decided by a universal rule because it "should be driven by the contract language—language that obviously may vary from policy to policy." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 30 (Tex. 2008). Accordingly, the *Silverstein* allegations triggered Myers's duty to defend Lender only if the amended guaranties create a duty to defend that is triggered by such allegations. And as discussed above, the plain language of amended section 4(c) requires an "occurrence" of fraud

by Myers or Borrower to trigger Myers's duties, not an "allegation." Given the language of amended section 4(c), Lender's analogy to insurance law is unconvincing.

Lender argues that Myers's interpretation of the agreements is unreasonable because it renders the duty to defend indistinguishable from the duty to indemnify and, therefore, meaningless. We disagree. There are circumstances that would trigger Myers's duty to defend without simultaneously triggering his duty to indemnify. For example, if a third party successfully sues Myers for fraud related to the project and committed after the specified date, the "occurrence of . . . fraud" condition in amended section 4(c) will be satisfied. If Lender is subsequently sued on a covered claim, Myers will be obliged to defend Lender from the outset; later, depending on the outcome of that suit, Myers may have to indemnify Lender as well. Thus, Myers's interpretation of the agreements does not render the duty to defend meaningless. By contrast, Lender's interpretation would require us to rewrite the amended section 4 by replacing the word "occurrence" with "allegation." This we may not do. *See Lewis v. Foxworth*, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.) ("We may neither rewrite the contract nor add to its language.").

Next, Lender points out that the *Silverstein* lawsuit, which included a claim of fraud, was already pending against Myers when Lender and Myers executed the forbearance agreement. The forbearance agreement makes Myers's duties conditional on the occurrence of fraud. Therefore, Lender concludes, the parties intended that Myers would defend Lender in the *Silverstein* lawsuit. This argument is unpersuasive. If the parties intended for Myers to defend Lender in the already-pending *Silverstein* lawsuit, they could have used the word "allegation" instead of "occurrence" in amended section 4—or, more obviously, they could have simply said, "Myers will defend Lender against the *Silverstein* lawsuit," or words to that effect. Instead, they conditioned Myers's duties on the occurrence of fraud or misrepresentation by Myers or

–9–

Borrower, and the summary-judgment evidence before us contains no proof of such an occurrence.

Lender points out that the forbearance agreement contains two specific references to the *Silverstein* lawsuit. First, Lender points to section 2.2(a) of the forbearance agreement. That section modified the guaranty obligations owed to Lender by a different guarantor, N.P. Limited Partnership. Section 2.2(a) is generally similar to section 2.2(b) pertaining to Myers, but section 2.2(a) contains a specific exclusion stating that N.P. Limited Partnerhsip "shall have no liability whatsoever in connection with" the *Silverstein* lawsuit. From this, Lender argues that the parties must have intended Myers to defend Lender against the *Silverstein* lawsuit. But this argument ignores the key language in section 2.2(b) providing that Myers has no duties to Lender at all unless there is an occurrence after the specified date of one of the listed events, such as fraud by Myers or Borrower. The mention of the *Silverstein* lawsuit in section 2.2(a) carries no implications for the proper interpretation of section 2.2(b). N.P. Limited Partnership has no duties relating to the *Silverstein* lawsuit, while Myers may have such duties if one of the listed conditions is fulfilled.

The forbearance agreement also mentions the *Silverstein* lawsuit in section 6.3, "Representations and Warranties of Lender." In that provision, Lender warrants to Myers and the other guarantor that Lender is not aware of any claims that it may have against the guarantors except for the *Silverstein* lawsuit. Lender does not explain how this mention of the *Silverstein* lawsuit should affect the proper interpretation of section 2.2(b), and we do not perceive any interaction between the two. We conclude section 6.3 does not affect the proper interpretation of section 2.2(b).

Finally, Lender relies on another provision in amended section 4 of the guaranty agreements. At the end of amended section 4 is a proviso that if Myers's duties are triggered

under section 4(a) or section 4(c), <u>and</u> those triggering events relate to a specific lawsuit called *Bracket Builders, Inc. v. Lodging First, LLC et al.*, then Myers's duties will be limited to the extent of "actual monetary damages suffered by Lender as a result of such event or events." Lender argues that if the parties had intended for Myers's duties to be triggered only by a finding of fraud in the *Silverstein* lawsuit, they would have used similar language. The above-quoted provision adds a special limitation on Myers's exposure with respect to the claims in the *Bracket Builders* lawsuit. But it does not change the overarching thrust of amended section 4: Myers's general duty to perform Borrower's obligations is conditioned on the occurrence of one of the six listed conditions after the specified date. The existence of extra limitations on that duty with respect to the *Bracket Builders* lawsuit does not imply that the conditions should not be enforced according to their terms as to the *Silverstein* lawsuit.

### 4. Conclusion

We conclude that Myers's interpretation of the forbearance agreement is reasonable and correct. Under the forbearance agreement and amended section 4(c) of the guaranties, Myers owes Lender no duty to perform Borrower's obligations unless there is an occurrence of fraud or intentional or material misrepresentation on or after the specified date by Borrower or Myers related to the project. Lender failed to adduce evidence proving as a matter of law that such an occurrence ever took place. Accordingly, Lender failed to prove as a matter of law that Myers breached the guaranties, and Lender was not entitled to summary judgment on its breach-of-contract claim.

## B. Other issues

We next consider Myers's third issue in which he argues that the trial judge erred by granting a declaratory judgment that "Myers has a duty to defend [Lender] in the Silverstein Lawsuit." The trial judge granted the declaratory relief in the final judgment after not

–11–

mentioning the declaratory-judgment claim at all in the partial summary judgment order. Myers argues that we should nevertheless treat the declaratory relief as having been granted on summary judgment because the subsequent bench trial concerned only Lender's claim for attorneys' fees. On the merits, he argues that the award of declaratory relief is erroneous for the same reason the breach-of-contract judgment is erroneous, and he adds that Lender's declaratory-judgment claim is also not a justiciable controversy because Lender has been nonsuited from the *Silverstein* lawsuit.

Lender does not dispute that the award of declaratory relief was predicated on Lender's summary-judgment motion. Indeed, Lender argues that Myers has waived any complaint about the award of the declaratory relief because Myers did not respond to Lender's summary-judgment motion with respect to that claim. But a summary-judgment nonmovant can always attack on appeal the legal sufficiency of the grounds presented in the summary-judgment motion, even without filing a response. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Myers's argument on appeal satisfies the *Clear Creek* rule—he contends that Lender's summary-judgment proof on its face does not entitle Lender to declaratory judgment as a matter of law that Myers will owe Lender a duty to defend if Lender is rejoined in the *Silverstein* case. For the reasons stated in Part II.A above, we agree. The trial judge erred by granting Lender declaratory judgment.

This leaves Myers's second issue, in which he challenges the award of attorneys' fees to Lender. Having reversed the judgment in Lender's favor on its claims for breach of contract and declaratory judgment, we necessarily conclude that the award of attorneys' fees must be reversed as well. *See Morton v. Nguyen*, 412 S.W.3d 506, 512 (Tex. 2013).

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment in its entirety and remand the case for further proceedings consistent with this opinion.

121557F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD MYERS, Appellant

No. 05-12-01557-CV      V.

HALL COLUMBUS LENDER, LLC,
Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-04295.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellant Richard Myers recover his costs of this appeal from appellee Hall Columbus Lender, LLC.

Judgment entered July 17, 2014