**Affirmed Opinion and Memorandum Opinion filed April 29, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00082-CV

## LOVE & JOY SERVICES, LLC AND LOVERS ESTATE, LLC, Appellants

### V.

## UNITY NATIONAL BANK AND WATERSTONE LSP, LLC, Appellees

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2016-79109**

## MEMORANDUM OPINION

On November 18, 2014, a fire burned down an 85% complete construction project in southeast Houston. After the fire, the corporate owners of the property (appellants) and their lender (one of the appellees in this case) discovered that, at the time of the fire, the contractor that the owners had hired to construct the facility had allowed their builder's risk insurance coverage to lapse. No insurance covered the loss. The corporate owners of the property sued the contractor and its insurance agent for allowing the property to go uninsured. The owners also sued

the lender that loaned the money to buy the property and build the structure and the loan service provider that assisted in the SBA-loan process. The trial court granted summary-judgment motions in favor of the lender and the loan service provider and severed those claims from the remainder of the lawsuit.

In this appeal, appellants Love & Joy Services, LLC and Lover's Estate, LLC (at times collectively referred to as the "Love & Joy Parties", or referred to singularly as "Love & Joy"), the uninsured borrowers of an SBA-guaranteed construction loan challenge the trial court's summary-judgment dismissals of certain claims they asserted against appellees, Unity National Bank ("Unity) the lender and Waterstone, the lender service provider used to package and process the SBA loan.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Love & Joy set out to build a new care facility and an administration building on Mallow Street in southeast Houston.[1] To finance the project, Love & Joy pursued a small business loan, and ultimately selected Unity, a financial institution that provides, among other services, loans guaranteed by the Small Business Association. United recommended that Love & Joy retain Waterstone, a third-party Lender Service Provider to aid Love & Joy in its SBA application. Love & Joy agreed and signed an agreement with Waterstone to provide such services. Waterstone was paid $1,500 to aid Love & Joy in obtaining the SBA-loan approval. Additionally, Waterstone entered into a separate Lender Service Provider Agreement ("LSP") with Unity to provide processing services for Unity including:

---

[1] Sheila Swirczynski is the owner and president of appellants, Love & Joy Services, LLC and Lover's Estate, LLC, which operates assisted living facilities. Swirczynski has operated various assisted living facilities in the Houston area. Love & Joy provides day care services to adults with mental and physical health challenges.

(1) Review and assist Unity in the preparation of its credit analysis;

(2) Assist Unity in the completion of Unity's portion of the SBA loan application;

(3) Coordinate the collection and review of required due diligence documentation;

(4) Coordinate the closing and funding of the SBA loan; and

(5) Obtain, as needed, all necessary amendments to Unity's credit approval and the SBA loan authorization.[2]

On September 12, 2013, the SBA approved the Love & Joy-Unity SBA loan application and offered assistance to back the loan with its 75% guarantee (1.78 million dollars). The Authorization stated that it was "between Lender [Unity] and SBA and creates no third-party rights or benefits to Borrower [Love & Joy Parties]."

To build the facility, Love & Joy hired Jose Rodriguez d/b/a A&A Construction Management Corporation "A&A", a general contractor that Love & Joy had used before. The contracts for the care facility and administration building were entered on September 20 and 23 between Love & Joy and A&A. The construction contract required A&A to obtain insurance:

> Insurance: Contractor shall purchase and maintain such insurance that will protect the contractor from any and all claims under workman's compensation laws or other employee benefit law, for damages because of bodily injury, including death or dismemberment, and for claims for damages to property which may arise out of resulting from contractor operations under this agreement. Contractor shall purchase and maintain property insurance (Builders Risk Policy) against the perils of fire, extended coverage, theft, vandalism and malicious mischief, the amount of said insurance shall be equal to the estimate appraised value of the completed project. Certificates of such insurance shall be filed with owner.

As outlined in several letters to Love & Joy, after Waterstone did its

---

[2] Lender Service Provider Agreement between Unity and Waterstone executed May 6, 2013.

packaging work for Love & Joy,[3] and after the SBA approved Love & Joy's application, Waterstone's "packaging" services for Love & Joy were completed. Thereafter, pursuant to its LSP with Unity, Waterstone assisted Unity in closing the SBA loan.

Among other insurance-related requirements to secure the loan, Unity and the SBA required proof that the construction project was covered by builder's risk insurance.[4] The ultimate obligation to carry such insurance fell upon the builder. A&A used JC Worrell's Insurance Agency a/k/a J. Ceaser's Farmer's Insurance Agency ("Worrell"), as its insurance agent to assist in securing builder's risk insurance.

In connection with its responsibilities under the LSP, Waterstone was responsible for collecting a Certificate of Liability Insurance (i.e. builder's risk insurance certificate) ("Certificate") for Unity's review and approval for the SBA loan closing on October 25, 2013.

Consistent with requirements set out in the SBA loan authorization and the SBA Standard Operating Procedures, Waterstone only collected *proof* of A&A's builder's risk insurance; Waterstone did not collect or attempt to collect or review the actual builder's risk policy. On September 25, 2013, Waterstone provided Unity the Certificate of Insurance that A&A had builder's risk insurance for a one-year term (9/25/13 – 9/25/14) in the amount of $1,400,000 for 4317 Mallow Street and $300,000 for 4322 Mallow Street. Unity was listed on the Certificate as a

---

[3] Waterstone gathered the necessary documents from Love & Joy, packaged the SBA loan, and then delivered such documents to Unity Bank on or around August 21, 2013.

[4] Among the panoply of agreements, the duty to secure various insurance fell on the borrower (Love & Joy), as between lender (Unity) and borrower (Love & Joy); but fell on the builder (A&A) to specifically obtain builder's risk insurance, as between the owner (Love & Joy) and the builder (A&A).

certificate holder and mortgagee and lender's loss payee.

Fourteen months later, on November 17-18, 2014, a fire burned the nearly-complete building down at 4317 Mallow Street. A&A had never secured the one-year policy represented in the Certificate of Insurance, but instead purchased a six-month policy that did not contain terms naming Unity as certificate holder entitled to notice. A&A allowed the policy to lapse and did not renew. Unity and Love & Joy both contend that they did not discover the uninsured-status of the property until the day of the fire.

*Plaintiff's Lawsuit*

Love & Joy filed suit on October 15, 2016, and its live pleading asserts claims against Unity, A&A and the underwriter and subsequently added claims and parties. As against Unity and Waterstone, Love & Joy asserts claims for declaratory judgment, breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation and violation of the Texas Deceptive Trade Practices Act. Relevant to our discussion below, Love & Joy's live petition includes these claims and theories:

> Breach of contract claims against Unity based on a theory that Unity breached a contractual obligation to require Love & Joy's contractor, A&A, to carry the appropriate builder's insurance and when Unity allegedly failed to review the policy to see if it was appropriate as required by Standard Operating Procedures set by the Small Business Association (SBA SOP).

> Love & Joy's negligence claims against Unity are based on allegations of Unity's contractual duty to Love & Joy, and allegations that Unity breached its duty to Love & Joy by allowing the builder's risk to lapse without informing Love & Joy that the contractor did not pay the policy monthly payment and by not placing force insurance on the property immediately upon its notification that A&A had allowed the builder's risk policy to lapse.

> Breach of fiduciary duty claims against Waterstone allege that

5

Waterstone was responsible for making sure all SBA requirements were met before the loan was finalized, and that, as Unity's agent, was to review all insurance policies to make sure they were sufficient and met SBA requirements.

*Summary Judgment*

Unity filed a traditional motion for summary judgment asserting that Love & Joy's breach of contract, fiduciary duty and negligence claims all failed for lack of their respective duty (contractual, fiduciary, ordinary care) essential to their claims. Love & Joy responded and addressed the challenged element of duty as to each challenged claim.

Unity filed a second motion for summary judgment challenging Love & Joy's DTPA claim, negligent misrepresentation claim and claim for declaratory judgment. Unity challenged Love & Joy's DTPA claims and negligent misrepresentation claim on various grounds, including no evidence grounds. Love & Joy did not respond to the second motion and the trial court granted the motion. Love and Joy does not challenge the court's disposition of these claims.

Waterstone filed a hybrid no-evidence and traditional motion for summary judgment to dismiss all claims Joy & Love asserted against it. Specifically as to Love & Joy's negligence, negligent misrepresentation, and DTPA claims, Waterstone asserted a statute of limitations affirmative defense. Love & Joy timely responded with various exhibits in support.

The trial court rendered summary judgment on all Love & Joy claims against Unity and Waterstone.

## II. ISSUES AND ANALYSIS

In its first issue, Love & Joy challenges the trial court's order granting Waterstone's motion for summary judgment. Under the first issue, Love & Joy

6

addresses the statute of limitations defense, and seeks to address grounds for disposing the claims for breach of fiduciary duty and negligent misrepresentation. In its second issue, Love & Joy challenges the trial court's summary judgment in favor of Unity. Under the second issue, Love & Joy aims to revive its claims for breach of contract and negligence.

## A. Standard of Review

We review a no-evidence summary judgment under a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) ("A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict."). A no-evidence summary judgment will be sustained when: "(a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact." *King Ranch*, 118 S.W.3d at 751 (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

We review a trial court's order granting a traditional motion for summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of summary judgment, we consider all of the evidence in the light most favorable to the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pled and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

7

If the trial court grants summary judgment without specifying the grounds, we affirm the judgment if any of the grounds presented are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We first review the trial court's no-evidence summary judgment under the standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The nonmovant, here Love & Joy, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment under that provision. Tex. R. Civ. P. 166a(i). If Love & Joy failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether Waterstone or Unity's proof satisfied the Rule 166a(c) burden. *See Ford Motor*, 135 S.W.3d at 600. And, if an appellant does not challenge every possible ground for summary judgment, we will uphold the summary judgment on any of the unchallenged grounds. *Durham v. Accardi*, 587 S.W.3d 179, 183 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

**B. Love & Joy waived its negligent misrepresentation and DTPA claims against Unity at the summary-judgment stage and does not challenge those claims on appeal**

In its no-evidence motion, Unity asserted no-evidence grounds against at least one essential element of Love & Joy's claims for negligent misrepresentation and for DTPA violations. Love & Joy did not file a summary-judgment response, or otherwise identify evidence in response to Unity's no-evidence motion, leaving the trial court with little choice but to grant Unity's no-evidence motion. *See* Tex. R. Civ. P. 166a(i)("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.").

Having waived these claims in the trial court, Love & Joy cannot show that the trial court erred in granting the no-evidence summary-judgment motion on Love & Joy's claims for negligent misrepresentation and for DTPA violations, and

8

we need not address whether the trial court erred in granting Unity's traditional summary judgment targeting those same claims. *See Stettner v. Lewis & Maese Auction, LLC*, 611 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Lee v. Palacios*, 14-06-00428-CV, 2007 WL 2990277, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, pet. denied)("[A]bsent a summary-judgment response identifying evidence raising a fact issue, the trial court was not required to review [the nonmovant's] other filings to find any such evidence.").

## C. Love & Joy's declaratory judgment action against both parties is waived

If Love & Joy has not intentionally abandoned its declaratory judgment claims against each appellee it has effectively done so on appeal. Love & Joy's declaratory judgment claims sought the trial court's determinations establishing:

> whether or not the SBA's SOP required Defendants, Unity Bank and Waterstone, to ensure that the Builder's risk policy is sufficient and covered the correct parties; and

> whether or not the SBA's SOP required Defendants, Unity Bank and Waterstone, to ensure a performance bond was obtained by the contractor.

Unity and Waterstone's summary judgment motions requested dismissal of Love & Joy's declaratory judgment action on, generally, the same two grounds: (1) that the plain language interpretation of the SBA's SOP provisions demonstrated that neither Unity or Waterstone was obligated to perform the alleged insurance related tasks in Love & Joy's favor, and that any requirement to secure a performance bond was waived pursuant to the SBA's SOP; and (2) that public policy did not favor the declaratory judgment action on the basis that Love & Joy's other claims already addressed the same issues. Beyond the fact section, Love & Joy's brief includes no reference to its declaratory judgment claims or the trial court's dismissal of those claim. Even if we presume Love & Joy's response

to Waterstone's motion raised issues of material fact that should have precluded summary-judgment dismissal, and even if we presume Unity's summary-judgment motion challenging the Love & Joy's declaratory judgment action (to which Love & Joy did not file a response) did not stand on its own such that the trial court's dismissal those claims would be improper, Love & Joy's failure to address or challenge any of the asserted grounds for dismissal of the declaratory judgment actions on appeal operates as a waiver. *Green v. Richard D. Davis, L.L.P.*, 593 S.W.3d 842, 854–55 (Tex. App.—Houston [14th Dist.] 2019, pet. denied)(finding party waived challenge to summary judgment on declaratory judgment action for inadequate briefing); Tex. R. App. P. 38.1(i); *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 44 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed).

Because Love & Joy has not assigned error challenging the trial court's summary-judgment dismissal of its declaratory judgment actions against Unity and Waterstone, we will not disturb the trial court's judgment as to those claims.

**D. Love & Joy's breach of contract claim against Waterstone and breach of fiduciary duty claim against Unity are inadequately briefed**

The appellate briefing rules instruct that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities." Tex. R. App. P. 38.1(i). Briefs must also be liberally, but reasonably, construed so that the right to appeal is not lost by waiver. *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732–33 (Tex. 2020). To determine whether an issue was waived, a court looks not only to the wording of the issue but the argument under each heading to assess the intent of the parties. *Id.*; *see also Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). It is essential for courts to look not

simply at the wording of parties' issues, but also the arguments, evidence, and citations relied on by those parties to determine which issues the parties intended to and actually briefed. *Lion Copolymer Holdings, LLC*, 614 S.W.3d at 732–33.

Under its first issue, Love & Joy refers to its breach of contract claim against Waterstone only in its subheading, in its argument, "NEGLIGENT MISREPRESENTATION/ BREACH OF CONTRACT". But under that subheading, Love & Joy devotes exclusive attention to the trial court's denial of its negligent misrepresentation claim, and makes no mention of the breach of contract claim. Based on our review of the content of Love & Joy's brief, it neither intended nor actually briefed a challenge to the trial summary-judgment order dismissing Love & Joy's breach of contract claim against Unity. Similarly, in its issue statement for its second issue, Love & Joy's brief states "The trial court erred in granting UNITY BANK's motions for summary judgment where UNITY had a contractual, *fiduciary* and common law duty to validate 10-to-15-day cancellation clauses in builders risk policies. . .".[5] This is the sole use of the term "fiduciary", and the remaining portion of the argument under the second issue does not attempt to address a claim against Unity for breach of fiduciary duty; none of the arguments, evidence, or citations suggest that Love & Joy intended to address the fiduciary duty claim. Accordingly, we conclude that Love & Joy has waived on appeal any challenge to the trial court's summary judgment dismissal of its claim against Waterstone for breach of contract, and claim against Unity for breach of fiduciary duty.

**E. Love & Joy's negligence, negligent misrepresentation, and DTPA claims against Waterstone are barred by the statute of limitations.**

Among the other claims it first asserted against Waterstone when it added

---

[5] Emphasis added.

Waterstone to the lawsuit in its amended petition, Love & Joy brought claims for negligence, negligent misrepresentation, and violations under the Deceptive Trade Practices Act, which are all claims governed by a two-year statute of limitations. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (applicable to claims for "for trespass for injury to the estate or to the property of another", including common law negligence and negligent misrepresentation claims); Tex. Bus. & Com. Code Ann. § 17.565 (applicable to claims under the DTPA).

Waterstone immediately raised the limitations defense in its original answer, retained the defense in subsequent and live pleadings, and sought dismissal of the three claims in its summary judgment motion. Although Love & Joy responded to the argument by asserting the application of the discovery rule in its summary-judgment response, Love & Joy's pleadings are silent with regard to its entitlement to the discovery rule. Waterstone contends that Love & Joy's failure to plead the discovery rule operates as a waiver of the argument. Whether a party facing a statute of limitations defense who asserts application the discovery rule only in its summary-judgment response (without first asserting entitlement to the discovery rule or at least alleging supportive facts in its pleading), as Love & Joy has done, waives the argument, is a question without a clear answer in our jurisprudence, and yet not one we must decide today. The statute of limitations issue resolves too clearly on the merits. Therefore, we presume, without deciding, that Love & Joy did not waive its right to assert the discovery rule, to consider whether the trial court would have erred in granting Waterstone's summary judgment on its statute of limitations defense with respect to the negligence, negligent misrepresentation, and DTPA claims while accounting for Love & Joy's discovery rule argument.

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a

12

judicial remedy." *Provident Life & Accident Ins. Co., v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id*.

The "discovery rule" is a common law exception to the statute of limitations and defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Like the discovery rule, a statutory exception is built into the 2-year DTPA statute of limitations. Tex. Bus. & Com. Code Ann. § 17.565 (providing that actions "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred *or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice*."). Under the discovery rule, accrual may be deferred if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (quoting *Computer Assocs.*, 918 S.W.2d at 456). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id*. at 313-14.

When a defendant moves for summary judgment on the statute of limitations when the discovery rule is at issue, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of her injury. *Wakefield v. Bank of Am., N.A.*, 14-16-00580-CV, 2018 WL

456721, at *5 (Tex. App.—Houston [14th Dist.] Jan. 18, 2018, no pet.)

In its summary judgment motion, Waterstone refers to uncontroverted facts admitted in Love and Joy's original petition against Unity, such as the occurrence of the fire and Love & Joy's immediate discovery of its uninsured status. Waterstone included uncontroverted testimony and letters showing that Waterstone communicated with Love & Joy's president about matters pertaining to obtaining insurance which were essential to closing the loan with Unity. In short, all relevant events (fire, discovery of no coverage), and parties (including Waterstone) arguably connected to that conduct were known by Love & Joy at the time of or immediately after the injury—when the fire destroyed uninsured property.

Because Waterstone's summary judgment evidence conclusively established that Love & Joy discovered its injury more than two years before it sued Waterstone, Waterstone is entitled to summary judgment. Once Love & Joy knew that it had been injured by virtue of the property being uninsured and investigated the conduct of its lender in connection with that injury, Love & Joy should have similarly investigated Waterstone, it lender's service provider. Accordingly, even assuming Love & Joy pled the discovery rule in due order, the trial court would have been correct in concluding that the discovery rule did not rescue Love & Joy's claims. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999)(concluding discovery rule did not rescue late filed claims against bank's auditor for injuries of asset mismanagement and loss, when the record conclusively showed that alleged asset mismanagement and loss had been discovered and investigated within the limitations period prior to plaintiff's lawsuit against the bank).

We therefore overrule Love & Joy's complaint that the trial court erroneously dismissed on statue of limitations grounds its negligence, negligent

14

misrepresentation, and DTPA claims against Waterstone.

## F. The trial court did not err in its summary-judgment dismissal of Love & Joy's breach of fiduciary duty claim against Waterstone

The elements of a breach of fiduciary duty claim are: "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. – Houston [14th Dist.] 2008, pet. denied). Waterstone's no evidence summary judgment motion challenged the sufficiency of evidence on each of these three essential elements of Love & Joy's breach of fiduciary duty claims. It also filed a traditional motion aiming to conclusively demonstrate that Waterstone did not have a fiduciary duty to Love & Joy. We first evaluate the summary judgment proof with respect to the existence of a fiduciary relationship.

Texas courts have held that the relationship between a borrower and lender is not a fiduciary one. *1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital,* 192 S.W.3d 20, 36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Generally, the relationship between a borrower and a lender is an arm's length business relationship in which both parties are looking out for their own interests."); *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.,* 819 S.W.2d 607, 610 (Tex. App.-Houston. [1st Dist.] 1991, no writ) (holding as a general rule that a "bank and its customers do not have a special or confidential relationship"). Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship. *Caserotti v. State Farm Ins. Co.,* 791 S.W.2d 561, 565 (Tex. App.--Dallas 1990, writ denied). A duty of good faith is imposed in a contract where there is a "special relationship"

characterized "by shared trust or an imbalance in bargaining power." *Coleman,* 795 S.W.2d at 708–09.

We find it significant that while not a lender, Waterstone performed services in conjunction with and comparable to the service a lender provides in closing on a loan. *See Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1005–06 (S.D. Tex. 2011)(comparing equally a lender's fiduciary obligations and a loan servicer's fiduciary obligations to a borrower). The record reveals that Waterstone assisted Love & Joy in the packaging of its SBA loan application, then assisted Unity in collecting required documents and preparing the loan for closing. In essence, Waterstone was providing the work that the lender (Unity) would have performed internally but chose to outsource given the peculiarities of the SBA-loan process. Love & Joy has not provided any evidence of prior dealings between Love & Joy and Waterstone that would suggest the special relationship should exist.

The engagement letter between Love & Joy and Waterstone makes clear that Waterstone's tasks were to "assist[] [Love & Joy] in coordinating the SBA packaging and approval process, and subsequently, the closing of [Love & Joy's] loan with [Unity]." Love & Joy has not shown how Waterstone's assistance in packaging and closing the loan including its retention of advance funds gave rise to a fiduciary duty to perform a degree of insurance policy review services beyond what was required under the SBA's Standard Operating Procedures. *See Wakefield v. Bank of Am., N.A.*, 14-16-00580-CV, 2018 WL 456721, at *5 (Tex. App.— Houston [14th Dist.] Jan. 18, 2018, no pet.). The trial court reasonably could conclude under the applicable standard that Love & Joy did not provide sufficient proof of a special, fiduciary relationship between Love & Joy and Waterstone.

Accordingly, we overrule Love & Joy's complaint under its first issue, that the trial court erred in granting Waterstone's summary judgment as to Love &

Joy's breach of fiduciary duty claim.

**G. The trial court did not err in granting Unity's summary judgment motion as to Love & Joy's breach of contract claim against Unity**

In challenging the trial court's summary-judgment order dismissing its breach of contract claims, Love & Joy asks us to address whether trial court erred in its implicit finding that Unity did not owe Love & Joy any contractual duty to (i) validate 10 to 15 day cancellation clauses in builders risk policies; (ii) establish that Unity was named as mortgage holder/loss payee; and (iii) determine that the builder's risk policy provided coverage for the life of the loan. Our analysis of whether Unity owed a contractual duty to Love & Joy to perform such tasks, or obtain, maintain, or provide proof of builder's risk insurance requires that we interpret the contracts executed between them.

Neither party contends the contracts are ambiguous; they dispute the legal import of the terms. The interpretation of an unambiguous contract is a question of law for the court. *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In construing written contracts, the concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). When parties disagree over the meaning of an unambiguous contract, we determine the parties' intent by examining the entire agreement. *Id*. Moreover, unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning.

The Loan Agreement executed between Unity and Love & Joy included three provisions related to insurance; each places the burden on Love & Joy— rather than Unity—to "obtain", "maintain", and "deliver[] to Lender. . . policies or

17

evidence thereof".[6]

The Security Agreement, executed the same day, like the Loan Agreement, imposes on Love & Joy a duty to "have and maintain" insurance at all times. The entire provision on insurance reads as follows:

> Insurance. Debtor shall have and maintain insurance at all times with respect to all tangible Collateral insuring against risks of fire (including so-called extended coverage), theft and such other risks as Secured Party may require, containing such terms, in such form and amounts and written by such companies as may be satisfactory to Secured Party, all of such insurance to contain loss payable clauses in favor of Secured Party as its interest may appear. All policies of insurance shall provide for fifteen (15) days written minimum cancellation notice to Secured Party and at the request of Secured Party shall be delivered to and held by it. Secured Party is hereby authorized to act as attorney for Debtor in obtaining, adjusting, settling and canceling such insurance to the Obligations secured hereby whether or not such Obligations are then due and payable. Debtor specifically authorizes Secured Party to disclose from the policies of insurance to prospective insurers regarding the Collateral.

Love & Joy's interpretation of the contract, particularly this provision, is that it places upon Unity ("Secured Party") the duty to insure the collateral. We cannot agree that the provision imposes any insurance-related *duties* on Unity in favor of Love & Joy; we do not construe from this provision or any other contracts, the triad of duties Love & Joy argues exist in its favor. Conversely, we interpret this provision to further detail Love & Joy's insurance-obligations and to provide rights to Unity concerning those insurance-obligations: (1) providing Unity the right to inject itself into Love & Joy's agreements with insurers so that Unity may confirm it has "loss payable clauses in favor of Secured Party", (2) requiring that the insurance that Love & Joy obtains on the collateral include a term for fifteen days

---

[6] Contrary to Love & Joy's interpretation of the documents we find nothing in the Commitment Letter or the Loan Authorization that represents a promise by Unity to Love & Joy.

written minimum cancellation notice to Unity, (3) providing Unity the right to request delivery of the policy, (4) allowing Unity the right to secure a lender-placed policy on the collateral. We interpret the phrase — "Secured Party is hereby authorized to act as attorney for Debtor in obtaining, adjusting, settling and canceling such insurance to the Obligations secured hereby whether or not such Obligations are then due and payable" in its context as a means of allowing Unity the ability to address coverage for collateral if Love & Joy failed to do so itself.

Accordingly, we overrule Love & Joy's complaint under its second issue, that the trial court erred in granting Unity's summary judgment as to Love & Joy's breach of contract claim.

## H. The trial court did not err in granting Unity's summary judgment as to Love & Joy's negligence claims

Unity's summary-judgment motion on Love & Joy's negligence claim asserted that Unity had no common law duty of care giving rise to such a claim and the negligence claim was barred by the economic loss rule. As with other claims, the trial court did not specify the reason it granted the motion on negligence claims.

Unity noted in its motion that the only duty specifically referred to in Love & Joy's petition was directly based on contractual provisions. Specifically, in its live petition, Love & Joy's negligence claim only referred to "a duty to faithfully perform their portion of the contracts as to not harm [Love & Joy]." From the pleadings' description of the breach, one could further interpret the duty as one of the lender not allowing the borrower's insurance to lapse. The duty Love & Joy articulates in its summary judgment response goes back further in time:

> Love & Joy position is that the negligence occurred when Unity failed to review the policy for its correctness as required by the SBA

19

Standard Operating Procedures (SOP) in place at the time of the loan closing. Love & Joy is not stating that the negligence is the result of the Defendant not ensuring the builder's risk was in place at the time of the incident but that the Defendant was negligent in not following the SBA SOP and verifying the adequacy of the policy.

Whichever theory Love & Joy intends to pursue with respect to the insurance — negligence in failing to obtain it or in failing to maintain it — Love & Joy has pointed us to no authority, and our own research has not revealed such authority, establishing a duty of care (which if breached would give rise to a negligence claim) for a lender to make sure the borrower obtains and maintains insurance coverage. While we do not foreclose the possibility that a court could find such duty is created, the law as it currently stands does not lend to such a conclusion. *See Garcia v. Bank of Am. Corp.*, 375 S.W. 3d 322, 335 (Tex. App.— Houston [14th Dist.] 2012, no pet.)(concluding that when a lender obtains insurance to protect its own interest in the collateral, it not required to name the borrower on the policy or otherwise protect the borrower's interest); *see also Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1005–06 (S.D. Tex. 2011)(finding no legally cognizable duty under Texas law).

Accordingly, we overrule Love & Joy's complaint under its second issue, that the trial court erred in granting Unity's summary judgment as to Love & Joy's negligence claim.

### III. CONCLUSION

We affirm the judgment of the trial court.


/s/    Randy Wilson
Justice


Panel consists of Justices Jewell, Spain, and Wilson.

20