# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-0937
══════════

MEHRDAD MOAYEDI, PETITIONER,

v.

INTERSTATE 35/CHISAM ROAD, L.P. AND
MALACHI DEVELOPMENT CORPORATION, RESPONDENTS

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
══════════════════════════════════════════

**Argued January 8, 2014**

JUSTICE WILLETT delivered the opinion of the Court.

This dispute asks whether a party waives the statutory right of offset under section 51.003(c) of the Property Code by agreeing to a general waiver of defenses in a guaranty agreement. The court of appeals answered yes, holding that section 51.003 creates an affirmative defense and that the guaranty agreement waives all possible defenses against liability, including the offset provision at issue here. We affirm.

## I. Factual and Procedural Background

Villages of Sanger, Ltd. borrowed $696,000 from lenders I-35/Chisam Road, L.P. and Malachi Development Corporation. The three-year note was secured by a deed of trust covering real property in Denton County. Merhdad Moayedi, as president of Villages' general partner, Pars Investment, Inc., guaranteed the loan. The guaranty agreement provides that Moayedi's liability is

limited to $196,000 plus accrued interest and collection costs. The agreement also includes the general waiver of defenses at issue here:

> 7.  Guarantor further agrees that this Guaranty shall not be discharged, impaired or affected by (a) the transfer by the Borrower of all or any portion of the real estate or improvements thereon, or of any security or collateral described in the Deed of Trust or in any other security document, or (b) any defense (other than the full payment of the indebtedness hereby guaranteed in accordance with the terms hereof) that the Guarantor may or might have as to Guarantor's respective undertakings, liabilities and obligations hereunder, each and every such defense being hereby waived by the undersigned Guarantor.

After Villages defaulted on the loan, I-35 purchased the secured property in a nonjudicial foreclosure sale at which I-35 was the sole bidder. The parties agree that the fair market value of the property at the time of the foreclosure sale was $840,000. The purchase price at foreclosure, however, was $487,200. After applying all credits and the proceeds from the sale, I-35 sued Moayedi to recover the $266,748.84 balance remaining on the note.

Moayedi included in his answer that under Property Code section 51.003, any deficiency owed should be offset by the difference between the fair market value and the foreclosure price. Later he moved for summary judgment based on that same section, asking the trial court to apply the offset. Moayedi argued that because the difference between the fair market value and the foreclosure price exceeded the amount owed, his liability should be extinguished. I-35 did not contest the fair market value of the property, and argued instead that paragraphs 7 and 13 of the guaranty agreement waived section 51.003. Moayedi eventually filed two motions for summary judgment, and I-35 also moved for summary judgment. The trial court granted summary judgment for Moayedi.

2

The court of appeals reversed, holding that in paragraph 7, Moayedi waived his right to apply section 51.003.[1] The court of appeals held that the offset is an affirmative defense. It concluded that the use of "any," "each," and "every" in the agreement encompassed all possible defenses and conveyed an intent that the guaranty would not be subject to any defense other than payment. It further concluded that at least three other provisions in the agreement indicated the same intent, including Moayedi's agreement that I-35 could enforce the guaranty without first resorting to or exhausting any security or collateral. According to the court, then, because Moayedi waived all defenses, he waived the right to avail himself of section 51.003's offset provision. The court also held that it could not address I-35's argument that Moayedi waived section 51.003 in paragraph 13 of the agreement.

Before this Court, Moayedi argues that section 51.003 should not be characterized as a defense and that the waiver in paragraph 7 is so lacking in specificity that Moayedi could not be said to have knowingly and intentionally waived his right to apply section 51.003. We disagree.

## II. Discussion

We review a trial court's grant of summary judgment de novo.[2] When both parties move for summary judgment, each party bears the burden of establishing its entitlement to judgment as a matter of law.[3]

---

[1] 377 S.W.3d 791.

[2] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[3] *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

## A. Deficiency Judgments

Deficiency judgments based on foreclosure proceeds have been statutorily provided for since 1846.[4] The Court has always interpreted those provisions consistent with the understanding that a deficiency is premised on the concept of a foreclosure. For example, in the 1930s, the Legislature enacted a statute that allowed the debtor an offset for the actual value of the property.[5] This Court held that because the statute acted retroactively to impair existing contract obligations, it was unconstitutional under article I, section 16 of the Texas Constitution.[6] The Court stated, "It seems to us that the act before us does in fact operate upon and impair the 'obligation' of the contract, in that it nullifies that portion of the contract, read in the light of the then existing statute, which entitled the [creditor] to a deficiency judgment."[7] Concluding that even if the statute were interpreted as merely operating on the remedy for the enforcement of the contract, the provision was nevertheless unconstitutional because it abridged the rights of the mortgagee so as to make the contract less valuable.[8]

In 1965, the Court again addressed, albeit indirectly, whether a deficiency judgment is based on the foreclosure proceeds.[9] In that case, the debtor challenged the validity of the foreclosure sale,

---

[4] *See Langever v. Miller*, 76 S.W.2d 1025, 1027 (Tex. 1934).

[5] Act of April 21, 1933, 43rd Leg., R.S., ch. 92, § 1, 1933 Tex. Gen. Laws 198, 199.

[6] *Langever*, 76 S.W.2d at 1029.

[7] *Id.*

[8] *Id.*

[9] *See Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex. 1965).

4

arguing that the property had been inaccurately described. The Court relied on the rule that a deficiency judgment is based on "the amount of the note, interest and attorney's fees, less the amount received at the trustee sale and other legitimate credits."[10]

Moreover, this Court's understanding is not unique; indeed, one of the very definitions of "deficiency" is the amount remaining on a debt after applying the proceeds realized at a foreclosure sale.[11] In keeping with this understanding, the Court has concluded that mere inadequacy of consideration does not invalidate a foreclosure sale and open the door to a fair market value determination.[12] Nor does a creditor need to "liquidate its security promptly . . . to minimize the guarantor's liability for any deficiency."[13]

## B. Property Code Section 51.003

It was against that legal backdrop that section 51.003 was enacted. Section 51.003 was added to the Property Code in 1991. No doubt it is intended to protect borrowers and guarantors. When lenders are the sole bidders at a foreclosure sale, they can control the foreclosure sale price and by implication the deficiency judgment. There is little incentive for them to bid high when a low bid preserves the amount they might get in a judgment against the borrower. Thus, the nonjudicial foreclosure sale often does not directly represent what a buyer might pay in the market.

---

[10] *Id.* (citing *Maupin v. Cheney*, 163 S.W.2d 380 (Tex. 1942)).

[11] BLACK'S LAW DICTIONARY 514 (10th ed. 2014).

[12] *See Am. Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975); *Tarrant Sav. Ass'n*, 390 S.W.2d at 475.

[13] *FDIC v. Coleman*, 795 S.W.2d 706, 708 (Tex. 1990).

Under the new law, a deficiency judgment is still the amount by which the debt and foreclosure costs exceed the foreclosure sale price. But, that amount may be reduced if the borrower or guarantor files a motion under section 51.003. Section 51.003 provides that if the fact-finder determines that the fair market value is greater than the foreclosure sale price, the party obligated on the debt may ask the court to offset the deficiency owed by the difference between the fair market value and the foreclosure sale price:

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence . . . .

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation . . . exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

(d) Any money received by a lender from a private mortgage guaranty insurer shall be credited to the account of the borrower prior to the lender bringing an action at law for any deficiency owed by the borrower. Notwithstanding the foregoing, the credit required by this subsection shall not apply to the exercise by a private mortgage guaranty insurer of its subrogation rights against a borrower or other person liable for any deficiency.[14]

---

[14] TEX. PROP. CODE § 51.003.

As an example, imagine a debtor owes $100,000 secured by a piece of property. At the foreclosure sale the property is sold for $60,000. The resulting debt is the amount owed minus the proceeds from the foreclosure sale. That amount is affected by the costs associated with foreclosure, but for simplicity's sake, we will ignore those variables. Here, the resulting deficiency would be $100,000 minus $60,000, or $40,000.

If section 51.003 applies, the court can hear evidence regarding what the fair market value of the property was at the time of the foreclosure sale. If the fair market value exceeded the foreclosure sale price, the court shall offset the deficiency by that difference. Using our example, let us assume that the fair market value of the property at the time of foreclosure is $75,000. Because the fair market value, $75,000, exceeds the foreclosure sale price, $60,000, the deficiency judgment can be reduced by the difference between those amounts, that is, by $15,000. The resulting amount owed is $40,000 (the deficiency) minus $15,000, or $25,000.

We disagree with Moayedi that the statute creates a system of two different methods of calculating a deficiency. Rather, the language of the statute presupposes the traditional definition of deficiency, one based on the foreclosure proceeds. But the statute provides an offset that otherwise would not be available. In other words, it provides a defense.

Section 51.003 is designed to ensure that debtors receive credit when their foreclosed property is sold at an unreasonably low price. But, like many statutory provisions designed to protect one contracting party or another, the benefit offered may be refused.

### C. Whether Moayedi Waived Section 51.003

Texans have long embraced the principle of freedom of contract.[15] And this Court's decisions respect the strong public policy of respecting parties' freedom to design agreements according to their wishes.[16]

---

[15] *See* Tex. Const. art. I, § 16.

[16] *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007).

Whether Moayedi can waive section 51.003 is not disputed by the parties. And although this Court has not addressed whether section 51.003 may be waived, other courts have consistently held so.[17]

We agree. In general, parties may waive statutory and even constitutional rights.[18] Occasionally, the Legislature decides that some benefits are too important—and thus may not allow them—to be waived. But, when it does decide to prohibit waiver, we ask that the Legislature speak clearly. And indeed, other provisions in the Property Code do include anti-waiver language.[19] This anti-deficiency law, however, nowhere prohibits waiver.

So, Moayedi could waive section 51.003. The question is whether he did. We agree with the court of appeals that the general waiver in paragraph 7 of the guaranty agreement waives the application of section 51.003.

To be effective, a waiver must be clear and specific. The United States Supreme Court has defined waiver as an "intentional relinquishment or abandonment of a known right or privilege."[20] This Court has defined waiver as the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[21] Determining whether there has been an "intelligent waiver" depends on the circumstances of the case.[22] Waiver is a matter of intent as "[t]here can be no waiver unless so intended by one party and so understood by the other."[23]

---

[17] *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 842 (5th Cir. 2002); *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 278 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[18] *See In re Prudential Ins. Co.*, 148 S.W.3d 124 (Tex. 2004).

[19] *See, e.g.*, TEX. PROP. CODE §§ 28.006(a), 54.043(b), 59.004, 91.006.

[20] *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

[21] *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).

[22] *See Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401–02 (Tex. 1967).

[23] *Lesikar v. Rappeport*, 33 S.W.3d 282, 300 (Tex. App.—Texarkana 2000, pet. denied).

Courts construe unambiguous guaranty agreements as any other contract.[24] If the meaning of a guaranty agreement is uncertain, "its terms should be given a construction which is most favorable to the guarantor."[25] The interpretation of an unambiguous contract, however, is a question of law for the court.[26] "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."[27] Courts must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."[28] When parties disagree over the meaning of an unambiguous contract, we determine the parties' intent by examining the entire agreement.[29] Moreover, unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning.[30]

Until now, this Court has not addressed the level of specificity required to waive section 51.003. Most cases in which courts have concluded section 51.003 was waived involved language with more specificity than the language at issue here.[31]

---

[24] *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983).

[25] *Id.* at 394 n.1.

[26] *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).

[27] *J.M. Davidson v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

[28] *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (emphasis in original).

[29] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[30] *Id.*

[31] *See, e.g.*, *LaSalle*, 289 F.3d at 840 (guaranty waived "right of offset"); *Segal*, 155 S.W.3d at 278 (guaranty waived "all rights, remedies, claims and defenses based upon or related to Sections 51.003, 51.004 and 51.005 of the Texas Property Code").

Moayedi argues that our decision in *Shumway v. Horizon Credit Corp.*[32] should apply here. *Shumway* addresses the necessary specificity of a debtor's waiver of rights to presentment, notice of the note holder's intent to accelerate, and notice of acceleration of the balance due upon default. In *Shumway*, we noted that a lender can neither create nor exercise its right to accelerate a debt unless the provisions creating that right are clear and unequivocal. Having held that a lender has no right to accelerate a debt without saying so in clear and unequivocal language, it necessarily followed that a debtor could waive notice of acceleration only by meeting the same exacting standard of clarity and precision.

Thus, the specificity required to waive notice of acceleration in *Shumway* was premised on the rule that the right itself was not created unless the lender initially met the high standard of specificity and precision. "To meet this standard," we held, "a waiver provision must state specifically and separately the rights surrendered."[33]

Moayedi relies on *Shumway* to argue that just as "all notice" or "any notice whatsoever" is ineffective to waive notice of acceleration and notice of intent to accelerate, here, the general waiver language in his guaranty contract is similarly ineffective.

Moayedi argues that he cannot be said to have knowingly and intentionally waived section 51.003, but we must ask, if that's the case, then what did Moayedi think he was waiving when he waived "any," "each," and "every" defense? We have no doubt that the waiver would include the UCC defenses under the Business and Commerce Code, and Moayedi conceded in oral argument that it does operate to waive ordinary, common-law defenses. Thus, the waiver is not meaningless. Nor is there any indication that Moayedi was not a sophisticated businessman. After all, he was the president of Villages' general partner. But, we can see no principled way to distinguish common-

---

[32] 801 S.W.2d 890 (Tex. 1991).

[33] *Id.* at 893.

10

law defenses from that created by section 51.003. It is true that unlike the ordinary common-law defenses, section 51.003 is a legislative creature. But that distinction gets us nowhere.

As the court of appeals concluded, the plain meaning of "any," "each," and "every" used in paragraph 7 results in a broad waiver of all possible defenses.

Just because the waiver is all encompassing does not mean that it is unclear or vague. To waive all possible defenses seems to very clearly indicate what defenses are included: all of them. Indeed, a waiver provision such as this one may be more descriptive to a layperson than a waiver referencing Property Code section numbers.

The parties disagree about the effect of other waivers and statements of liability in the agreement. We agree with Moayedi that the meaning of the waiver in paragraph 7 depends on the rest of the agreement, but we agree with the court of appeals that these provisions indicate an intent that the guaranty would not be subject to any defense other than full payment. In particular, Moayedi agreed that I-35 could enforce the guaranty without first resorting to or exhausting any security or collateral and waived diligence on I-35's part in the collection of payment from Villages. Read as a whole, then, we think the waiver in paragraph 7, though broad, is not without meaning and is intended to include all defenses.

## D. Guaranty Agreement Paragraph 13

The parties also argue in this Court whether Moayedi waived section 51.003 when he waived "all rights and remedies of surety" in paragraph 13 of the guaranty agreement. Because we dispose of this case according to the waiver in paragraph 7 of the guaranty agreement, we need not reach the parties' arguments regarding paragraph 13.

## III. Conclusion

The guaranty agreement yields but one conclusion: Moayedi waived his statutory right to an offset. We affirm the court of appeals' judgment.

11

_____

Don R. Willett
Justice

**OPINION DELIVERED:** June 13, 2014