**Opinion filed January 22, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00025-CV

_____

**ANDERSON LEE UPTON, Appellant**

**V.**

**TAMARA KAY UPTON, Appellee**

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 17-05-17571**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a divorce proceeding. Appellee, Tamara Kay Upton, filed for divorce against Appellant, Anderson Lee Upton, on May 30, 2017. As a result of a mediation that occurred on September 18, 2018, the parties executed a mediation agreement. The mediation agreement expressly provided that it was not subject to revocation. *See* TEX. FAM. CODE ANN. § 6.602 (West 2020). The parties

subsequently presented a final decree of divorce to the trial court for entry on October 25, 2018.

Approximately two weeks after the entry of the final decree, Tamara filed a "Motion for Clarification of Mediation Agreement." She alleged in the motion that the final decree of divorce did not reflect the parties' agreement as reflected in the mediation agreement. Specifically, she asserted that the decree did not confirm items of separate property that were confirmed as her separate property in the mediation agreement. Conversely, Anderson asserted that the mediation agreement did not confirm the items as Tamara's separate property. After a hearing on the motion, the trial court agreed with Tamara by entering an order that confirmed the sixty-five items as Tamara's separate property. Anderson brings four issues on appeal challenging the trial court's order. We affirm.

In order to resolve this appeal, we must interpret the terms of the mediation agreement. The importance of the mediation agreement in the family law context is reflected in recent cases from the Texas Supreme Court. "It is well-settled that an MSA[1] that meets section 6.602's statutory formalities 'is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement.'" *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019) (quoting *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012)); *see also Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). A statutory compliant MSA is binding on both the parties and the trial court, subject to a few narrow exceptions. *Highsmith*, 587 S.W.3d at 775. The parties do not dispute that the mediation agreement in this case satisfied the statutory formalities contained in Section 6.602.

---

[1]Mediated Settlement Agreement.

Most of Anderson's appellate contentions are premised on his interpretation of the mediation agreement. "Because an MSA is a contract, we look to general contract-interpretation principles to determine its meaning." *Loya*, 526 S.W.3d at 451. "Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo using well-settled contract-construction principles." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018).

When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. *Id.* "Objective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *Id.* at 763–64 (footnote omitted) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)). "We therefore 'presume parties intend what the words of their contract say' and interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Id.* at 764 (first quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126; then quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

The parties' mediation agreement consisted of three parts. We will refer to the three parts as "the Preamble," "Exhibit A," and "Exhibit B." Among other things, the three-page Preamble contained the caption of the divorce proceeding, identified the parties, and provided for the irrevocability of the mediation agreement. The Preamble further provided: "3. Agreed Settlement: The parties agree to the items set forth in Exhibit "A" *and "B"* attached hereto and incorporated by reference" (emphasis added). The italicized portion was handwritten with the initials of the parties and their attorneys written beside it. The Preamble concluded with the signatures of the parties and their attorneys.

Exhibit A was one-page in length. It consisted of twelve items that set out the principal terms of the parties' agreement. For example, Item No. 1 provided as follows: "1. Anderson Upton retains all farmland and the debt on the farmland." Anderson directs our attention to Item No. 2 of Exhibit A: "2. Anderson Upton retains the home and its contents except for the items listed on Exhibit B that have been circled and to which he has agreed." Item No. 10 of Exhibit A provided as follows: "Each party shall retain the personal property in their possession except as set forth in Exhibit B."

Exhibit B was a nine-page listing of personal property items. The words "Property List" was written on the top of each page of Exhibit B. The first four and one-half pages of Exhibit B identified 124 items of personal property that appeared to be in the parties' residence. These 124 items were not listed under a separate heading. Approximately twelve of these 124 items were circled, and the word "yes" was written beside them. These twelve items are not in dispute. In that regard, the decree awarded these items to Tamara.

The last four and one-half pages of Exhibit B consisted of sixty-five items listed under the heading of "**SEPARATE PROPERTY**." Each of the sixty-five items had a description of the item that appeared to list why it was separate property. For example, several of the items were noted to be "gifts." Also, several items were denoted as Tamara's personal property, such as "All Tamara's Clothing," "All Tamara's coats and Jackets," "All Tamara's cologne, lotion and trays," and "Crystal glasses and China from Tamara's aunt." The final decree of divorce did not contain any reference to the sixty-five items of separate property listed in Exhibit B. These sixty-five items are the matters in dispute in the appeal because the trial court awarded them to Tamara in its "Order on Motion for Clarification of Mediation Agreement."

4

Anderson asserts in his first issue that the trial court abused its discretion by awarding the sixty-five separate property items to Tamara. Anderson is essentially asserting in his first issue that the trial court erred by interpreting the mediation agreement as confirming these separate property items as Tamara's separate property. Anderson premises his interpretation of the mediation agreement on Item No. 2 of Exhibit A wherein the agreement provides: "2. Anderson Upton retains the home and its contents except for the items listed on Exhibit B that have been circled and to which he has agreed." He contends that he did not agree that the sixty-five items listed under "**SEPARATE PROPERTY**" were Tamara's separate property because the items were not circled and the word "yes" did not appear beside them.

We disagree with Anderson's reading of the mediation agreement. Under his construction of the mediation agreement, Exhibit B is only a supplement to Item No. 2 of Exhibit A. However, the Preamble indicates that Exhibit B is a supplement to the entire mediation agreement along with Exhibit A. Furthermore, Item No. 2 of Exhibit A is not the only item of Exhibit A that addressed Exhibit B. As we noted previously, Item No. 10 also addressed Exhibit B by providing: "10. Each party shall retain the personal property in their possession except as set forth in Exhibit B." Item No. 10 did not contain a requirement that matters on Exhibit B had to be circled or "yes" written by them.

The sixty-five items that are at issue in this appeal are under a heading of "**SEPARATE PROPERTY**" on Exhibit B that is in bold text and all caps. These sixty-five items are separately numbered from the 124 items that precede them on Exhibit B. The use of a separate numbering system, as well as the use of the heading "**SEPARATE PROPERTY**," indicates that the parties intended a different treatment for these sixty-five items than it did for the preceding 124 items. Accordingly, we disagree with Anderson's contention that the sixty-five items had

to be circled and the word "yes" written beside them in order for them to be considered Tamara's separate property. If Anderson's contention was correct, the heading "**SEPARATE PROPERTY**" would be rendered meaningless. Under the rules of contract construction, we are to construe a contract by considering the entire writing to harmonize and give effect to all of its provisions so that none of them are rendered meaningless. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). Under this principle, we conclude that the circling and "yes" requirements of Item No. 2 of Exhibit A only apply to the first 124 items of property listed on Exhibit B. We overrule Anderson's first issue.

In his second issue, Anderson asserts that the trial court abused its discretion by awarding the sixty-five items of separate property to Tamara because of a merger clause contained in the final decree of divorce. The merger clause provided as follows:

> This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement dated September 18, 2018 between the parties. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

Relying upon the merger clause, Anderson contends that the terms of the final decree control. We disagree.

Anderson relies on *Wiegrefe v. Wiegrefe*, No. 03-16-00665-CV, 2017 WL 3908645 (Tex. App.—Austin Aug. 29, 2017, no pet.) (mem. op.), to support his claim based on the merger clause. *Wiegrefe* involved similar facts because it concerned a divorce decree entered after a mediated settlement agreement. 2017 WL 3908645, at *1. The terms of the decree differed from the terms of the mediated settlement agreement, and the decree contained a similar merger clause. *Id.* at *5 n.4. In a footnote, the Austin Court of Appeals stated in dicta that, because of the

merger clause, the division of property in the decree supplanted the division of property in the mediated settlement agreement. *Id.*

Because of its procedural posture, we find *Wiegrefe* to be distinguishable. *Wiegrefe* was an appeal from a bill of review. *Id.* at *1. The appellant in *Wiegrefe* did not discover the discrepancy between the mediated settlement agreement and the decree until after the trial court's plenary power had expired. *Id.* at *1. As a result, the appellant was restricted to a bill of review proceeding in order to attempt to correct the discrepancy. *Id.* at *1–2. The court determined that the appellant had not made the required showing in order to obtain relief by way of a bill of review. *Id.* at *5.

Here, Tamara filed her motion seeking to correct the discrepancy between the mediation agreement and the divorce decree while the trial court still had plenary power. *See* TEX. R. CIV. P. 329b. Thus, she was not required to make a showing for a bill of review like the appellant in *Wiegrefe* was required to do in order to obtain relief. Furthermore, we disagree with *Wiegrefe*'s comment that a property division in a divorce decree with a merger clause can supplant a conflicting property division in a mediated settlement agreement. As noted in recent cases from the Texas Supreme Court, a mediated settlement agreement that meets the statutory formalities of Section 6.602 is binding on the parties and the trial court. *See Highsmith*, 587 S.W.3d at 775; *Loya*, 526 S.W.3d at 451; *Milner*, 361 S.W.3d at 618. Thus, the trial court is without authority to enter a divorce decree that contains a property division that conflicts with the terms of a mediated settlement agreement that meets the requirements of Section 6.602. Accordingly, the trial court did not err by determining that the merger clause of the final decree of divorce did not preclude an order to carry out the terms of the parties' mediation agreement. We overrule Anderson's second issue.

7

Anderson asserts in his third issue that the trial court erred by entering an order confirming that the sixty-five items were Tamara's separate property because the divorce decree was unambiguous. Anderson asserts that the trial court was without authority to relitigate the property division set out in the divorce decree. He cites Section 9.007(a) in support of this contention. *See* FAM. § 9.007(a).

Anderson's reliance on Section 9.007(a) is misplaced. This section applies to a suit to enforce a divorce decree. Tamara did not seek to enforce the terms of the divorce decree. Instead, the substance of her motion sought to modify the property division in the divorce decree so that it reflected the property division set out in the mediation agreement. Because she filed the motion while the trial court had plenary power over the divorce decree, Section 9.007(a)'s limitation against altering the property division in the original decree was inapplicable. *See DeGroot v. DeGroot*, 260 S.W.3d 658, 663 (Tex. App.—Dallas 2008, no pet.) (citing TEX. R. CIV. P. 329b(g)). We overrule Anderson's third issue.

In his fourth issue, Anderson asserts that the trial court's order awarding the sixty-five property items violated Sections 9.006(b) and 9.007(a). We have already determined that Section 9.007(a) is inapplicable to Tamara's motion because she was not seeking to enforce the property division in the divorce decree. For the same reason, Section 9.006(b) is inapplicable to Tamara's motion. We note that Anderson asserts in his reply brief that Tamara did not file a motion to modify the divorce decree but, rather, titled her motion as a motion to clarify the mediation agreement. However, the nature of a motion is determined by its substance rather than its title. *Guion v. Guion*, 597 S.W.3d 899, 905 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The nature of the relief sought by Tamara in her motion was (1) to obtain clarification of the mediation agreement's treatment of the sixty-five items of **SEPARATE PROPERTY** and (2) to obtain an order awarding those items to her.

Accordingly, we conclude that her motion was a timely filed motion seeking to modify the divorce decree so that it would reflect the property division set out in the mediation agreement. We overrule Anderson's fourth issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


January 22, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[2]

Williams, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.